UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00508-FDW-DSC

| | |
|---|---|
| SAUER BRANDS, INC., a/k/a Duke's, <br> Plaintiff, <br><br> vs. <br><br> DUKE SANDWICH PRODUCTIONS, INC., DFP SANDWICH SHOPS, LLC, and DUKE BRANDS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

ORDER

THIS MATTER is before the Court on Defendants' Motion to Dismiss or, in the alternative, to Transfer (Doc. No. 15). The motion has been fully briefed by the parties (Docs. Nos. 16, 18, 19), and the matter is ripe for disposition. For the reasons stated below, the motion is DENIED.

I.  **BACKGROUND**

Plaintiff Sauer Brands, Inc. ("Sauer Brands") filed this action on October 4, 2019, alleging federal trademark infringement, unfair competition, false designation of origin, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*, and common law unfair competition and false designation of origin claims, as well as requesting a cancellation of Defendants' trademark registrations. See generally (Doc. No. 1). Defendants Duke Sandwich Productions, Inc. ("Duke Sandwich"), DFP Sandwich Shops, LLC ("DFP"), and Duke Brands ("Duke Brands") (collectively "Defendants") then moved to dismiss the case for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, to transfer the

1

case to the District of South Carolina.  (Doc. No. 15).

## II. MOTION TO DISMISS FOR IMPROPER VENUE

Under 28 U.S.C. § 1391(b), "a civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b).  The statute further clarifies that "an entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  Id. § 1391(c)(2).  In the present case, Plaintiff has pled facts which establish the Court's personal jurisdiction over Defendants.  See Walden v. Fiore, 571 U.S. 277, 285 (2014) (discussing cases upholding personal jurisdiction over defendants by using the "minimum contacts" analysis); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-77 (1985) ("So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.") (internal quotations omitted); see also, e.g., (Doc. No. 1, p. 5, ¶ 20) ("Defendants are engaged in the promotion and sale of infringing products in and around Charlotte, North Carolina.  Attached as Exhibit A are representative examples of photographs showing Defendants' infringing DUKE'S branded products, which were purchased in Bi-Lo and/or Ingles grocery stores in and around Charlotte.  Moreover, Defendants have announced that in the third quarter of[ ]2019, they will open a manufacturing facility in this judicial district that they will use to prepare, package, and distribute the infringing products at issue in this

case.").[1]  Equally important is the fact that Defendants did not challenge the Court's personal jurisdiction in their motion, thereby waiving any argument as to this point.  Fed. R. Civ. P. 12(h).

Defendants contend "the Complaint does not demonstrate that a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district, nor does it demonstrate that a substantial part of the property that is [the] subject of the action is situat[ed] in this judicial district."  (Doc. No. 16, p. 5).  The case before the Court is a trademark infringement and unfair and deceptive trade practices dispute.  (Doc. No. 1, p. 3, ¶ 13).  In such cases, although venue in other fora may be appropriate as well, venue "generally will lie where the events or omissions that would give rise to a potential claim for trademark infringement occur."  Jeffers Handbell Supply, Inc. v. Schulmerich Bells, LLC, No. 0:16-cv-03918-JMC, 2017 WL 3582235, at *9 (D.S.C. Aug. 18, 2017).  In other words, "[b]ecause transactional venue for trademark infringement actions is appropriate in the locations where there are sales or advertising of the allegedly infringing goods or services," id., and because Plaintiff alleged trademark infringement from sales in and around the Charlotte area, (Doc. No. 1, p. 5, ¶ 20), venue is appropriate in the Western District of North Carolina.  Accordingly, the motion to dismiss is DENIED.

### III.    MOTION TO TRANSFER TO THE DISTRICT OF SOUTH CAROLINA

In the alternative, Defendants request the Court to transfer the case to the District of South Carolina.  (Doc. No. 16, p. 1).  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C.

---

[1] Exhibit A, as referenced in the parenthetical, can be found at (Doc. No. 1-1).

§ 1404(a). Defendants claim, and Plaintiff does not dispute, that the action could have originally been brought in the District of South Carolina. (Doc. No. 16, p. 5).

In evaluating whether to transfer a case to another jurisdiction, the Court must weigh eleven factors to determine whether Defendants have met their burden to transfer venue. Scenic Mktg. Grp., LLC v. S. Home Med. Equip., Inc., No. 3:11-CV-00551, 2012 WL 113664, at *1 (W.D.N.C. Jan. 13, 2012). As the Court has previously stated,

> In considering a motion to transfer, a court should consider, among other things, [1] the plaintiff's initial choice of forum; [2] the residence of the parties; [3] the relative ease of access of proof; [4] the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; [5] the possibility of a view; [6] the enforceability of a judgment, if obtained; [7] the relative advantages and obstacles to a fair trial; [8] other practical problems that make a trial easy, expeditious, and inexpensive; [9] the administrative difficulties of court congestion; [10] the interest in having localized controversies settled at home [and] the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; [11] and the avoidance of unnecessary problems with conflict of laws.

Commercial Equip. Co., Inc. v. Barclay Furniture Co., 738 F. Supp. 974, 976 (W.D.N.C. 1990). The Defendants "carr[y] a particularly heavy burden," as "[a] court should not disturb the plaintiff's choice of forum unless the moving party demonstrates that the balance of convenience to the parties and witnesses and the interests of justice weigh heavily in favor of the transfer to another district." Id. (citations omitted). The mere shifting of inconvenience from one party to another will not satisfy Defendants' burden. Id.; see also Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp., 753 F. Supp. 1315, 1322 (W.D.N.C. 1990) (noting that "if the equities lean but slightly in favor of the movant after all factors are considered," transfer is still not appropriate). In the present case, the parties agree that factors (5), (6), and (9)—

4

the ability to view, the enforceability of judgment, and court congestion—are neutral. The Court analyzes the remaining factors in turn below.

### A. Plaintiff's Initial Choice of Forum

"Plaintiff chose North Carolina as its choice of forum, and courts have given great weight to this factor of the analysis." Scenic Mktg. Grp., 2012 WL 113664, at *1; see also Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984); Commercial Equip. Co., 738 F. Supp. at 976 ("[A] court ordinarily should accord the plaintiff's choice of forum great weight."). When the plaintiff selects a foreign forum and the cause of action bears little relation to that forum, however, such decision is not entitled to the same deference. See JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007). Even then, there are at least two scenarios where a foreign plaintiff's choice of venue is still entitled to deference. The first is when the plaintiff cannot file suit in its home jurisdiction(s) due to problems obtaining personal jurisdiction over a defendant. See Charlotte's Best Breads, LLC v. Pumpernickel Assocs., LLC, No. 3:16-CV-00121-GCM, 2016 WL 3078749, at *4 (W.D.N.C. May 31, 2016) ("Because Defendant does not suggest that it would consent to jurisdiction in [the plaintiff's home jurisdiction], [Plaintiff's] decision not to file there is immaterial to the transfer analysis."). The second scenario is when, in trademark cases, the plaintiff is conducting business in that forum. See Kiss My Face Corp. v. Bunting, No. 02CIV2645, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003) ("Where there is ongoing business activity in the chosen forum, however, plaintiff's choice of forum is given more deference than it would if the connection to this forum were truly *de minimis*.") (quotation omitted); cf. PlayVision Labs, Inc. v. Nintendo of Am., Inc., No. 3:14-CV-312-GCM, 2014 WL 6472848, at

5

*2 (W.D.N.C. Nov. 18, 2014) (ordering transfer of a case when "*nothing* to do with the development or manufacture" of the controversy occurred in North Carolina) (emphasis added).

In the present case, because Plaintiff filed the action in the Western District of North Carolina, this factor weighs against transfer. Although Defendants argue that "Plaintiff fails to allege that a substantial part of the conduct occurred in the Western District of North Carolina," (Doc. No. 16, p. 7), the Complaint specifically alleges conduct giving rise to the causes of action—"the promotion and sale of infringing products"—has occurred "in and around Charlotte, North Carolina," which is in the Western District of North Carolina. (Doc. No. 1, p. 5, ¶ 20). Moreover, Plaintiff's home jurisdictions are Virginia (its principal place of business) and Delaware (its state of incorporation); there is no indication Defendants would consent to personal jurisdiction in either of those states, especially considering they have moved to transfer to their home district, the District of South Carolina. See (Doc. No. 16, p. 1-3, Doc. No. 16-1, p. 2). Finally, under the Kiss My Face analysis, Plaintiff's business operations in the Western District of North Carolina further entitle its forum selection deference. See (Doc. No. 18, p. 13; Doc. No. 18-2, p. 2, ¶ 4-8). Accordingly, this factor weighs against transfer.

**B. Residence of the Parties**

As stated above, when a corporation or business entity is subject to personal jurisdiction, it is considered to be a resident of that jurisdiction for purposes of venue. 28 U.S.C. § 1391(c)(2). Although no party is incorporated or maintains its principal place of business in North Carolina, all parties conduct or have allegedly conducted business activity in the Western District of North Carolina. See (Doc. No. 18-2, p. 2, ¶ 4-8); see also (Doc. No. 16, p. 7-8). Moreover, Defendants have not disputed the Court's jurisdiction over them. See generally (Doc. No. 15); see also Fed.

R. Civ. P. 12(b)(2), 12(h) (noting that, if an objection to personal jurisdiction is not made as part of the original 12(b) motion, it is deemed waived). As a result, all parties are deemed residents of this jurisdiction for venue purposes. Because all parties are North Carolina residents, this factor weighs against transfer.

### C. Relative Ease of Access of Proof

When the moving party fails to provide sufficient evidence that most of the evidence is in another jurisdiction or transporting witnesses to the jurisdiction would be costly, then transfer is not appropriate. SAS Inst., Inc. v. World Programming, Ltd., 468 F. App'x 264, 267 (4th Cir. 2012) (per curiam) (holding that failure to demonstrate all or most of the evidence was in the United Kingdom and transporting "myriad" U.K. witnesses to North Carolina would be costly meant dismissal on grounds of forum non conveniens was inappropriate). Here, Defendants generally claim all of their witnesses, documents and records are located in the District of South Carolina. (Doc. No. 16, p. 8-9). Plaintiff counters that it has at least some documentary evidence and witnesses located in the Western District of North Carolina, including "at least six possible non-party witnesses." (Doc. No. 18, p. 15). Since transferring the case to the District of South Carolina would merely shift the inconvenience to the parties, "the Court sees no distinct advantage of either venue in making access to proof easier; therefore, this factor weighs neither in favor nor against transfer." Scenic Mktg. Grp., 2012 WL 113664, at *2.

### D. Availability of Compulsory Process for Attendance of Witnesses and the Cost of Obtaining Attendance of Willing Witnesses

"Witness convenience is often dispositive in transfer decisions. But the influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved

7

and specifically describing their testimony." Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1258 (E.D. Va. 1988) (footnotes omitted). As the court in Baylor Heating & Air continued, "[i]n many instances, the original forum is convenient for plaintiff's witnesses, but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum. Under these circumstances, transfer is inappropriate because the result of the transfer would serve only to shift the balance of inconvenience." Id. In the present case, Defendants contend the case should be transferred because "*all* possible witnesses and evidence [for the Defendants] will be coming from South Carolina," although Defendants have not indicated who will testify or what their testimony is expected to be. (Doc. No. 19, p. 4) (emphasis in original). Moreover, Defendants appear to argue that because Plaintiff's owner is "a large private equity firm with a national presence instigating a lawsuit against a much smaller company after decades of peaceful co-existence," the factor should favor transfer. Id. at 4-5. Plaintiff has identified five grocery store employees in and around Charlotte and one private investigator based in Charlotte that made purchases of the allegedly infringing products in the Western District of North Carolina as potential witnesses that would testify regarding the display or purchase of said products. (Doc. No. 18, p. 15). In addition, Plaintiff has shown that travel from Richmond to Greenville is extensively more complicated because it would involve a flight from Richmond to Charlotte or Atlanta, and then a second flight to Greenville. Id. at 16; see also (Doc. No. 18-1, p. 3, ¶ 9). It is inevitable that parties and witnesses will be inconvenienced by litigation. Transferring the case to the District of South Carolina, however, only shifts the inconvenience from one party to the other. Accordingly, this factor weighs against transfer.

### E. The Relative Advantages and Obstacles to a Fair Trial

Neither party disputes they would receive a fair trial in either North Carolina or South Carolina. The Court need not consider this factor in its analysis.

### F. Other Practical Problems that make a Trial Easy, Expeditious, and Inexpensive

In the memorandum of law accompanying their motion, Defendants combined their discussion of the fourth factor (obtaining attendance of witnesses) and the eighth factor (other practical problems). (Doc. No. 16, p. 8). The discussion focused on the location of witnesses and documents and convenience for Defendants' witnesses. Nor does it appear Defendants discussed the eighth factor in their reply brief. See generally (Doc. No. 19). Plaintiff contends Defendants conceded the factor by failing to address it. (Doc. No. 18, p. 9). Without determining whether Defendants have conceded this factor, the Court is unaware of any problems not addressed in this order that would prohibit a relatively easy, expeditious, and inexpensive trial. This factor is therefore neutral.

### G. The Interest in Having Localized Controversies Settled at Home

Defendants argue, given the volume and location of Defendants' sales, as well as the origin of the Duke name, this action has stronger ties to the state of South Carolina. (Doc. No. 19, p. 5); see also (Doc. No. 16, p. 9). Instead, they argue, "Plaintiff has chosen North Carolina because that is the location of its private equity owner and outside counsel, and it has narrowly construed the Complaint to match its forum-shopping decision after-the-fact." (Doc. No. 19, p. 5). Plaintiff counters that North Carolina has an interest in having this dispute settled in the state because "every single count in this case is predicated on Defendants' infringing conduct and unfair competition, which stem from Defendants' sale of products using the confusingly similar DUKE Mark in this

9

district." (Doc. No. 18, p. 10). Moreover, Plaintiff cites the importance of the Charlotte market and sales within the area to its business. Id. at 10-11. Finally, one of Plaintiff's causes of action is brought under North Carolina state law. (Doc. No. 1, p. 24).

"There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947). Although the case at bar is not a diversity case per se, Plaintiff does bring claims under North Carolina state law—for example, the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*—over which the Court exercises its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). (Doc. No. 1, p. 24-25). Transferring the case to the District of South Carolina would ultimately result in a court applying foreign law, which weighs heavily against transfer. Gulf Oil Corp., 330 U.S. at 509; Scenic Mktg. Grp., 2012 WL 113664 at *3. More importantly, the complaint focuses on conduct that occurred inside the Western District of North Carolina giving rise to a legal dispute which North Carolina has an interest in resolving. See, e.g., (Doc. No. 1, p. 5, ¶ 20). Even if, as Defendants contend, Plaintiff drew the complaint narrowly to effectively manipulate venue, the Court will not venture a guess at ulterior motives harbored by either party; instead, the Court reads the Complaint as it is written. This factor weighs against transfer.

**H. The Avoidance of Unnecessary Problems with Conflict of Law**

Neither party argues there are complex issues pertaining to conflict of laws in this case. (Doc. No. 16, p. 7; Doc. No. 18, p. 9). When federal courts sit in diversity jurisdiction, they apply the conflicts rules of the law of the state in which they sit. Klaxon Co. v. Stentor Elec. Mfg. Co.,

Inc., 313 U.S. 487, 496 (1941).  In both North Carolina and South Carolina, courts follow traditional conflicts rules, which requires the application of lex loci—the law of the state where the wrong occurred.  Cargill, Inc. v. WDS, Inc., No. 3:16-cv-00848-FDW-DSC, 2018 WL 1525352, at *8 (W.D.N.C. Mar. 28, 2018); Witt v. Am. Trucking Ass'ns, Inc., 860 F. Supp. 295, 300 (D.S.C. 1994).  Because both states follow the same conflicts principles, there is not a foreseeable conflict of laws problem.  Accordingly, this factor is neutral.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or, in the alternative, Transfer (Doc. No. 15) is DENIED.

IT IS SO ORDERED.

Signed: January 6, 2020

Frank D. Whitney
Chief United States District Judge